1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

8
9

MELISSA GODSEY

10

    Plaintiff,

11

        v.

12

KATHLEEN HAWK SAWYER, in her official
capacity as Director of the Federal Bureau of
Prisons, NICOLE C. ENGLISH, in her official
capacity as Assistant Director of the Health
Services Division of the Federal Bureau of
Prisons,

13
14
15
16

    Defendants.

17

No.

**COMPLAINT AND REQUEST
FOR EMERGENCY
INJUNCTIVE RELIEF**

## **INTRODUCTION**

18

1.    This civil rights action challenges the life-threatening and discriminatory denial of

19

adequate medical care in Federal Bureau of Prisons ("BOP") facilities overseen by Defendants

20

Sawyer and English. Government officials must meet the medical needs of people in their

21

custody. Yet when it comes to opioid use disorder ("OUD"), a deadly disease that afflicts people

22
23

across the United States, the BOP's actions match neither its legal obligations nor the federal

24

government's own admonishments to state and local prisons and jails.

25

2.    The medical standard of care to treat opioid use disorder is medication-assisted

26
27

COMPLAINT - 1

**AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION**
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

treatment ("MAT"), which utilizes FDA-approved medications like methadone or buprenorphine. In recent years, the Department of Justice has investigated prisons and nursing facilities for denying MAT to inmates and residents. But the BOP itself does exactly that; defying medical consensus, it prohibits its non-pregnant inmates from accessing MAT to treat their OUD. As applied to Melissa Godsey, whose opioid use disorder is being successfully treated with Suboxone (buprenorphine/naloxone), and who has been ordered to begin a two-years and one-day federal sentence on September 30, 2019, the BOP's MAT policy violates the Eighth Amendment to the U.S. Constitution and the Rehabilitation Act. The BOP's policy of denying MAT also places Ms. Godsey in grave and immediate danger.

3.     Ms. Godsey has been diagnosed with bipolar disorder, depression, ADHD, and opioid use disorder. Ms. Godsey has struggled with substance abuse over the years, and has also enjoyed long periods of sobriety. In October 2014, she relapsed and began using heroin for the first time. Despite repeated attempts to quit using opioids, she was only successful when she began taking Suboxone as prescribed by her doctor in June 2018. With the help of her prescription Suboxone, Ms. Godsey has been in active recovery for fifteen months.

4.     While on Suboxone and in active recovery, Ms. Godsey has been able to live with her three youngest children and make sure that they are provided for.

5.     In September 2018, Ms. Godsey began taking Lithium, Strattera, Citalopram, and Trazadone after being diagnosed with bi-polar disorder. These medications allowed her to more fully engage in her OUD treatment and maintain her stability.

6.     Until recently, Ms. Godsey lived in a shelter with three of her children. The shelter did not permit her to take Suboxone, despite her doctor's recommendation that she

COMPLAINT - 2

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

continue her Suboxone treatment. She tried to taper herself off of Suboxone in order to retain her housing and provide a safe and stable home for her children. She immediately felt her cravings for opioids return and began to have suicidal thoughts. She realized that tapering off of her Suboxone was not an option for her if she wanted to stay off of opioids and to be a good parent to her children. Despite the high stakes, she continued to take her prescribed medications, though she ultimately lost her housing as a result.

7.      On June 28, 2019, Ms. Godsey was sentenced to two years and one day of federal imprisonment, to be served in Dublin, California, due to pleading guilty to bank fraud, identity theft, and possession of stolen mail. She is currently scheduled to self-surrender to the BOP on September 30, 2019.

8.       BOP facilities do not provide MAT maintenance therapy to any non-pregnant inmates with OUD. This policy applies even where, as here, a person is already taking prescribed Suboxone when they enter custody, and their doctor's professional opinion is that involuntarily ending that treatment would violate the standard of care.

9.      If Ms. Godsey is denied her prescribed Suboxone while she is incarcerated, she will inevitably suffer and possibly die. To begin, she will enter an acute and extremely painful period of withdrawal, which carries a heightened risk for numerous serious medical conditions. She will also experience a heightened probability of relapsing into opioid use, both during her two year-long incarceration and upon her release, which can result in overdose and death. Involuntarily removing Ms. Godsey from her medication is particularly dangerous given her co-occurring mental health conditions, such as bipolar disorder and depression.

10.      As applied to Ms. Godsey, Defendants' MAT policy violates her legal rights in

COMPLAINT - 3

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

two ways. First, it reflects deliberate indifference to her serious medical need, to her suffering, and to the long-term consequences of forced withdrawal. Defendants' actions therefore violate Ms. Godsey's Eighth Amendment right to be free from cruel and unusual punishment. Second, the denial of necessary medical care violates Ms. Godsey's right, under the Rehabilitation Act, to be free from discrimination based upon her disability.

11.     Ms. Godsey seeks emergency, preliminary, and permanent relief to require Defendants to provide her with adequate medical care and prevent suffering. Specifically, Ms. Godsey seeks declaratory and injunctive relief requiring Defendants to provide her with access to her medically-necessary, physician-prescribed Suboxone, without interruption, while serving her federal sentence

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action seeks to vindicate rights guaranteed by the Eighth Amendment to the United States Constitution and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

13.     This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. § 706, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the Court's inherent equitable powers.

14.     Venue lies in the Western District of Washington under 28 U.S.C. § 1391(e).

## PARTIES

15.     Plaintiff Melissa Godsey is a resident of Snohomish County, Washington.

COMPLAINT - 4

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

16.     Defendant Dr. Kathleen Hawk Sawyer is the Director of the Federal Bureau of Prisons. She is being sued in her official capacity only, in which she is responsible for overseeing the operation of all 122 BOP facilities.[1]

17.     Defendant Nicole C. English is the Assistant Director of the Health Services Division for the Federal Bureau of Prisons. She is being sued in her official capacity only, in which she directs the BOP's national medical program and oversees healthcare delivery for the BOP.[2]

## FACTUAL ALLEGATIONS

### A.     Opioid Use Disorder Is a Life-Threatening Medical Condition and a Public Health Crisis.

18.     Opioids are a class of drugs that inhibit pain and can have euphoric side effects. Many opioids have legitimate medical uses, including chronic pain management. Others, such as heroin, are not generally used in medicine in the United States, but are sold on the black market.

19.     OUD is a chronic brain disease with potentially deadly complications. Signs of OUD include cravings, increased tolerance to opioids, the inability to cut back or control opioid use, withdrawal symptoms, impaired social functioning, and loss of control.

20.     Like other chronic disease, OUD often involves cycles of relapse and remission.

21.     Without treatment or other recovery, patients with OUD are frequently unable to control their use of opioids. OUD is progressive and can result in further disability or premature death, including due to accidental overdose.

---

[1] *Kathleen Hawk Sawyer*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/agency/bio_dir.jsp (last visited Sept. 12, 2019).

[2] *Nicole C. English*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/agency/bio_hsd.jsp (last visited Sept. 16, 2019).

COMPLAINT - 5

22.     Opioid use disorder is a national public health crisis. As of 2016, 2.1 million Americans suffered from this disease.[3] Between 1999 and 2017, more than 700,000 people died from opioid overdose.[4] The death toll has increased exponentially in the past five years, and the number of opioid overdose deaths in 2017 was six times higher than in 1999.[5] Every day in America, an average of 130 people die after overdosing on opioids—equivalent to one person every 11.08 minutes.[6]

23.     Like the rest of the country, Washington State is in the midst of an opioid epidemic. As stated in an Executive Order from the Office of Governor Jay Inslee, "in 2015, each day an average of two Washingtonians died from opioid overdose, and heroin overdose deaths have more than doubled between 2010 and 2015. . . .  [T]he opioid epidemic continues to affect communities, devastate families, and overwhelm law enforcement, health care, and social service providers[.]"[7]

**B.     Medication-Assisted Treatment Is the Standard of Care for Opioid Use Disorder**

24.     MAT is the standard of care for OUD.

25.     MAT "is a comprehensive approach that combines FDA-approved medications . . . with counseling and other behavioral therapies to treat patients with opioid use

---

[3] Substance Abuse and Mental Health Services Administration, *TIP 63: Medications for Opioid Use Disorder* ES-2 (2018), https://store.samhsa.gov/system/files/sma18-5063fulldoc.pdf [hereinafter *TIP 63*].

[4] Centers for Disease Control and Prevention, *Opioid Overdose: Understanding the Epidemic* (Dec. 19, 2018)., https://www.cdc.gov/drugoverdose/epidemic/index.html.

[5] *Id.*

[6] *Id.*

[7] Addressing the Opioid Use Public Health Crisis, Wash. Office of the Governor Exec. Order No. 16-09 (Oct. 7, 2016), http://www.governor.wa.gov/sites/default/files/exe_order/eo_16-09.pdf.

COMPLAINT - 6

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

disorder (OUD)."[8] There is no justification to deny access to MAT due to a lack of behavioral

therapies because there is evidence that medication alone can be adequate for treatment

purposes.[9] Three medications used in MAT are methadone (sold under brand names such as

Dolophine and Methadose), buprenorphine and buprenorphine-naloxone (sold under brand

names such as Subutex, Suboxone, and Bunavail), and naltrexone (sold under brand names such

as ReVia and Vivitrol). These medications have been approved by the United States Food and

Drug Administration for treatment of opioid addiction.[10]

26.     Naltrexone works by blocking opioids from producing their euphoric effects and

thus reducing a desire for opioids over time. Buprenorphine and methadone act through a

different mechanism than naltrexone: both activate rather than block opioid receptors to relieve

withdrawal symptoms and control cravings.[11]

27.     Because of this important ability to act on opioid receptors without presenting the

same risk of overdose, buprenorphine and methadone have both been deemed "essential

medicines" by the World Health Organization.[12] Both methadone and buprenorphine facilitate

extinction learning (a gradual decrease in response to a stimulus, such as an opioid), because

---

[8] U.S. Food and Drug Administration, *FDA approves first generic versions of Suboxone sublingual film, which may increase access to treatment for opioid dependence* (June 14, 2018), https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm610807 htm.

[9] *See* Substance Abuse and Mental Health Services Administration, *Use of Medication-Assisted Treatment for Opioid Use Disorder in Criminal Justice Settings* 4 (2019), https://store.samhsa.gov/system/files/guide_4-0712_final_-_section_508_compliant.pdf.

[10] *See* National Institute on Drug Abuse, *Effective Treatments for Opioid Addiction* (Nov. 2016), https://www.drugabuse.gov/publications/effective-treatments-opioid-addiction/effective-treatments-opioid-addiction.

[11] *Use of Medication-Assisted Treatment for Opioid Use Disorder in Criminal Justice Settings*, *supra* note 9, at 6.

[12] *Effective Treatments for Opioid Addiction*, *supra* note 10.

COMPLAINT - 7

patients learn that they will not get the same "high" from taking illicit drugs like heroin and fentanyl.

28.     As with any prescription medication, patients' responses to these medications are individualized—a patient may find that only one of these medications provides effective treatment without significant adverse side effects.

29.     The results of treatment with MAT are dramatically superior to other treatment options.

30.     Studies of MAT show improved retention in treatment, abstinence from illicit drugs, and decreased mortality. MAT has been shown to decrease opioid use, opioid-related overdose deaths, criminal activity, and infectious disease transmission.[13] MAT has also been shown to increase patients' social functioning and retention in treatment.

31.     The primary driver of treatment efficacy in MAT regimens is the medication. Studies have shown that maintenance medication treatments of opioid use disorder reduce all-cause and overdose mortality and have a more robust effect on treatment efficacy than behavioral components of MAT.[14] Buprenorphine and methadone have been clinically proven to reduce opioid use more than (1) no treatment, (2) outpatient treatment without medication, (3) outpatient treatment with placebo medication, and (4) detoxification only.[15]

---

[13] Nora D. Volkow et al., *Medication-Assisted Therapies — Tackling the Opioid-Overdose Epidemic*, 370 NEW ENG. J. MED. 2063, 2064 (May 29, 2014); *Effective Treatments for Opioid Addiction*, *supra* note 10.

[14] *See* Laura Amato et al., *Psychosocial combined with agonist maintenance treatments versus agonist maintenance treatments alone for treatment of opioid dependence*, 10 COCHRANE DATABASE SYST. REV. CD004147 (Oct. 5, 2011).

[15] Genie L. Bailey et al., *Perceived relapse risk and desire for medication assisted treatment among persons seeking inpatient opiate detoxification*, 45(3) J. SUBST. ABUSE TREAT 302, 304- 05 (Jun. 18, 2013), https://www ncbi.nlm.nih.gov/pmc/articles/PMC4874241/; George E. Vaillant, *What cans Long-term Follow-up*

32.     Once a patient is successfully recovering from OUD through MAT, the arbitrary and sudden cessation of the medication is medically inappropriate, and in the case of methadone and buprenorphine, will cause excruciating withdrawal symptoms starting as early as 8 hours after cessation.[16]

33.     Withdrawal symptoms include severe diarrhea, cravings for opiates, irritability, sweating, nausea, tremor, vomiting, and severe muscle and bone pain.[17] These symptoms can sometimes lead to life-threatening complications.

34.     Withdrawal is particularly dangerous for patients with pre-existing psychiatric conditions, such as bi-polar disorder, because withdrawal symptoms can exacerbate their psychiatric conditions.[18]

**C.     The Federal Government Has Widely Adopted the Medical and Scientific Consensus that Medication for Addiction Treatment Is the Standard of Care for Opioid Use Disorder**

35.     Embracing the medical and scientific consensus, numerous federal entities have expressly endorsed the necessity of MAT, including: the Department of Health and Human Services ("HHS"),[19] the Food and Drug Administration ("FDA"),[20] the National Institute on

---

*Teach us About Relapse and Prevention of Relapse in Addiction?*, 83 BRITISH J. ADDICTION 1147, 1152-57 (Oct. 1988), https://onlinelibrary.wiley.com/doi/pdf/10.1111/j.1360-0443.1988.tb03021.x.

[16] *TIP 63*, *supra* note 3, at 3-88-89, 2-12.

[17] Federal Bureau of Prisons, *Detoxification of Chemically Dependent Inmates* 15 (2018), https://www.bop.gov/resources/pdfs/detoxification.pdf [hereinafter *BOP Clinical Guidance on Detoxification*].

[18] *Id*. at 3.

[19] *See, e.g.*, U.S. Food and Drug Administration, *FDA takes new steps to encourage the development of novel medicines for the treatment of opioid use disorder* (Aug. 6, 2018), https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm615892 htm (Health and Human Services Secretary Alex Azar explaining "[t]he evidence is clear: medication-assisted treatment works, and it is a key piece of defeating the drug crisis facing our country.") (internal quotation marks omitted).

[20] *See, e.g., id.* (FDA Commissioner Dr. Scott Gottlieb underscoring, "[w]e're committed to doing our part to expand access to high-quality, effective medication-assisted treatments and encouraging health care professionals

---

COMPLAINT - 9

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

Drug Abuse ("NIDA"),[21] the President's Commission on Combating Drug Addiction and the Opioid Crisis,[22] the Office of National Drug Control Policy ("ONDCP"),[23] and the Substance Abuse and Mental Health Services Administration ("SAMHSA").

36.     For example, clinical trials showing that MAT is more effective in reducing illicit opioid use than no medication, have led SAMHSA to conclude that "just as it is inadvisable to deny people with diabetes the medication they need to help manage their illness, it is also not sound medical practice to deny people with OUD access to FDA-approved medications for their illness."[24] SAMHSA has also highlighted that "doses and schedules of pharmacotherapy must be individualized[,]" and that some individuals may require "lifelong treatment."[25]

---

to ensure patients with opioid use disorder are offered an adequate chance to benefit from these therapies. This work also includes improving understanding about the treatment options available for patients and countering the unfortunate stigma that's sometimes associated with their use.") (internal quotation marks omitted).

[21] *See, e.g.,* Nora D. Volkow, *What Science tells us About Opioid Abuse and Addiction*, NATIONAL INSTITUTE ON DRUG ABUSE (Jan. 27, 2016), https://www.drugabuse.gov/about-nida/legislative-activities/testimony-to-congress/2016/what-science-tells-us-about-opioid-abuse-addiction (Presented before the Senate Judiciary Committee. National Institute on Drug Abuse Director Dr. Nora Volkow explained that "medications have become an essential component of an ongoing treatment plan, enabling opioid-addicted persons to regain control of their health and their lives," while emphasizing "[t]o be clear, the evidence supports long-term maintenance with these medicines in the context of behavioral treatment and recovery support, not short-term detoxification programs aimed at abstinence.") (footnote omitted).

[22] *See, e.g.,* Chris Christie et al., *The President's Commission on Combating Drug Addiction and the Opioid Crisis* 68 (2017), https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-1-2017.pdf (noting that treatment for opioid use disorder "should include" five elements including "[a]ccess to MAT (e.g., methadone, buprenorphine/naloxone, naltrexone). Choice of medication should be made by a qualified professional in consultation with patient, and based on clinical assessment.") [hereinafter *The President's Commission*].

[23] *See, e.g.,* Office of National Drug Control Policy, *National Drug Control Strategy* 10 (2019), https://www.whitehouse.gov/wp-content/uploads/2019/01/NDCS-Final.pdf ("The Administration will work across the Federal government to remove barriers to substance-use disorder treatments, including those that limit access to any forms of FDA-approved MAT, counseling, certain inpatient/residential treatment, and other treatment modalities.") [hereinafter *National Drug Control Strategy*].

[24] *TIP 63*, *supra* note 3, at ES-2.

[25] *Id.* at ES-2, ES-5.

COMPLAINT - 10

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

37.     The Department of Justice has taken the position that denying non-incarcerated individuals suffering from opioid use disorder access to MAT can constitute unlawful disability discrimination under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101, et seq.[26]

38.     The Department of Justice has also taken the position that denying incarcerated individuals suffering from opioid use disorder access to MAT can constitute unlawful disability discrimination under the ADA.

39.     The Department of Justice and its subordinates have taken concrete actions to combat this discrimination. In 2017, the Department of Justice's Civil Rights Division launched the Opioid Initiative to enforce the ADA and work with U.S. Attorney's Offices nationwide "[t]o ensure that people who have completed, or are participating in, treatment for OUD do not face unnecessary and discriminatory barriers to recovery[.]"[27]

40.     Also in 2017, the U.S. Attorney for the Southern District of New York sent a 10-page letter to the New York State Attorney General, explaining "[i]t has come to our attention that the Family Court and Surrogate's Court in Sullivan County, New York, as well as the stakeholders involved with those courts, may benefit from further information about the ADA's application to individuals receiving medication-assisted treatment ("MAT"), such as treatment with methadone or buprenorphine, for substance use disorders."[28]  Emphasizing that "MAT is a

---

[26] *See*, *e.g.*, Settlement Agreement Between the United States and Charlwell Operating, LLC, USAO No. 2018CV00025 (Dep't of Justice May 10, 2018), https://www.ada.gov/charlwell_sa.html.

[27] Charlotte Lanvers & Erin Meehan Richmond, *Opioid Use Disorders and the Americans with Disabilities Act: Eliminating Discriminatory Barriers to Treatment and Recovery*, NATIONAL RX DRUG ABUSE & HEROIN SUMMIT (Apr. 4, 2018), https://ncric.org/files/D2DF00000/037.pdf (PowerPoint presented by panelists from Department of Justice).

[28] Letter from Joon H. Kim, Acting U.S. Attorney for the Southern District of New York, U.S. Dep't of Justice, to New York State Office of the Attorney General, at 1(Oct. 3, 2017),

COMPLAINT - 11

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

safe and widely accepted strategy for treating opioid disorders," with "broad support [] among medical and substance use experts," the letter instructed that "the Sullivan Family Court and Sullivan Surrogate's Court should ensure that their policies and practices with respect to individuals participating in MAT are consistent with ADA requirements."[29]

41.    In March 2018, the U.S. Attorney for Massachusetts initiated an ADA investigation of the Massachusetts Department of Correction for its failure to provide non-pregnant inmates who had been prescribed MAT to treat their opioid use disorder with continued access to MAT during their incarceration.[30]  In so doing, the office emphasized "that all individuals in treatment for OUD, regardless of whether they are inmates or detainees, are already protected by the ADA, and [] the DOC has existing obligations to accommodate this disability."[31]

42.    In October 2018, the U.S. Attorney for Massachusetts initiated an ADA investigation of several county sheriffs for their failure to provide inmates who had been prescribed methadone or buprenorphine to treat their opioid use disorder with continued access to these medications during their incarceration.[32]

---

https://lac.org/wp-content/uploads/2018/02/DOJ-SDNY-ltr-to-OCA-10.3.17.pdf (regarding Medication-Assisted Treatment and the ADA).

[29] *Id.* at 2, 4-5.

[30] Letter from Andrew E. Lelling, United States Attorney for the District of Massachusetts, to David Solet, General Counsel, Mass. Exec. Office of Public Safety and Security, and to Jesse Caplan, General Counsel, Mass. Exec. Office of Health and Human Services (Mar. 16, 2018) (Regarding Investigation of the Massachusetts Department of Correction Pursuant to the Americans with Disabilities Act).

[31] *Id.*

[32] *See, e.g.*, *id.; see also* Beth Schwartzapfel, *When Going to Jail Means Giving Up Meds That Saved Your Life*, THE MARSHALL PROJECT (Jan. 29, 2019, 6:00 AM), https://www.themarshallproject.org/2019/01/29/when-going-to-jail-means-giving-up-the-meds-that-saved-your-life.

COMPLAINT - 12

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

**D.    Providing Medication For Addiction Treatment Is Particularly Important, and Administrable, in Correctional Settings.**

43.    Withholding MAT from incarcerated people with opioid use disorder greatly increase their chances of dying.

44.    As the President's Commission on Combating Drug Addiction and the Opioid Crisis has explained, "MAT has been found to be correlated with reduced risk of mortality in the weeks following release [from incarceration]," and a "large study of individuals with [opioid use disorder] released from prison found that individuals receiving MAT were 75% less likely to die of any cause and 85% less likely to die of drug poisoning in the first month after release."[33]

45.    Providing MAT in correctional settings is administrable. The BOP already permits pregnant inmates to access MAT.[34]

46.    Providing MAT in correctional settings saves lives.

47.    Numerous authorities have therefore recommended providing MAT in jails and prisons to help address the serious risks the opioid crisis poses for incarcerated people.

48.    For example, the Department of Justice's Adult Drug Court Discretionary Grant Program requires grantees to permit the use of MAT.[35]

49.    On behalf of the Trump Administration, the Office of National Drug Control Policy's 2019 report establishes "increasing the availability of MAT for incarcerated individuals" as a priority initiative.[36]

---

[33] *The President's Commission*, *supra* note 22, at 72 (footnote omitted).

[34] *See BOP Clinical Guidance on Detoxification*, *supra* note 17, at 4.

[35] U.S. Dept. of Justice, *Adult Drug Court Discretionary Grant Program FY 2018 Competitive Grant Announcement* (Apr. 30, 2018), https://www.bja.gov/funding/DrugCourts18.pdf.

[36] *National Drug Control Strategy*, *supra* note 23 at 9.

COMPLAINT - 13

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

50.     SAMSHA identifies "[m]aking [t]reatment [a]vailable to [c]riminal [j]ustice [p]opulations" as one of the "[r]emaining [c]hallenges" in fighting the opioid public health crisis.[37]

51.     In a 2018 report, the National Sheriffs' Association and the National Commission on Correctional Health Care explain that "correctional withdrawal alone actually increases the chances the person will overdose following community release due to loss of opioid tolerance" and "[f]or this reason, all individuals with OUD should be considered for MAT" while they are incarcerated.[38]  They emphasize that providing MAT in jails and prisons can "contribut[e] to the maintenance of a safe and secure facility for inmates and staff and reduce recidivism, withdrawal symptoms, the risk of post-release overdose and death, and disciplinary problems.[39]

52.     The American Society of Addiction Medicine, the leading professional society in the country on addiction medicine, also recommends treatment with MAT for people with opioid use disorder in the criminal justice system.[40]

53.     As recognized by these authorities, opioid use disorder is a chronic relapsing condition that requires medically appropriate treatment just like other chronic diseases.

---

[37] Substance Abuse and Mental Health Services Administration, *TIP 43: Medication-Assisted Treatment For Opioid Addiction in Opioid Treatment Programs* 6-8 (2005), https://www.asam.org/docs/advocacy/samhsa_tip43_matforopioidaddiction.pdf?sfvrsn=0.

[38] National Sheriffs' Association & National Commission on Correctional Health Care, *Jail-Based Medication-Assisted Treatment* 9, 21 (2018), https://www.sheriffs.org/publications/Jail-Based-MAT-PPG.pdf ("Jails should establish systems to ensure that detainees and sentenced inmates who had been receiving MAT, particularly methadone and buprenorphine, prior to their arrest have MAT continued when feasible.") (footnotes omitted) [hereinafter National Sheriffs' Association].

[39] *Id.* at 5-6, 21.

[40] Kyle Kampman & Margaret Jarvis, *American Society of Addiction Medicine (ASAM) National Practice Guideline for the Use of Medications in the Treatment of Addiction Involving Opioid Use*, 9 J. ADDICTION MED. 1, 8 (2015), https://www.asam.org/docs/default-source/practice-support/guidelines-and-consensus-docs/asam-national-practice-guideline-jam-article.pdf.

COMPLAINT - 14

54.     Once patients successfully begin using one form of MAT, they need to be maintained on that treatment under medical supervision to give them the best chance of success.

55.     Forced withdrawal is not medically appropriate for patients receiving MAT.

56.     Forced withdrawal disrupts the treatment plan of people on MAT, leading to a seven-fold decrease in continuing MAT after release. As the National Sheriffs' Association and National Commission on Correctional Healthcare emphasize, "forced detoxification of prescribed opioid medication, such as methadone, can undermine an individual's willingness to engage in MAT in the future, compromising the likelihood of long-term recovery."[41]  Death is three times as likely for people out of treatment versus when in treatment.[42]

57.     Reflecting this knowledge, numerous jails and prisons follow the medical standard of practice and allow prisoners to continue with MAT during incarceration. Examples include Bernalillo County Metropolitan Detention Center (New Mexico); Rikers Island Correctional Facility (New York); King and Whatcom County Jails (Washington State); Orange County Jail (Florida). The Rhode Island and Vermont Departments of Corrections make MAT available to all of their prisoners, even those who were not receiving MAT before being incarcerated.

58.     Following the medical standard of practice yields positive results. After the first year of the program within the Rhode Island Department of Corrections, 95 percent of inmates who were on MAT at the time they were incarcerated continued with their treatment after their

---

[41] National Sheriffs' Association, *supra* note 38, at 21 (footnote omitted).

[42] Elizabeth Evans et al., *Mortality among individuals accessing pharmacological treatment for opioid dependence in California, 2006-10*, 110(6) ADDICTION 996, 1003 (2015).

COMPLAINT - 15

release.[43] "Research showed that this program reduced post release deaths by 60 percent and all opioid-related deaths in the state by more than 12 percent."[44]

### E.    The Federal Bureau of Prisons Categorically and Arbitrarily Denies Medication for Addiction Treatment for Inmates with Opioid Use Disorder

59.    The BOP's National Formulary and Pharmacy Services Program Statement establish the BOP's official prescribing policies.[45]

60.    The BOP's Formulary instructs that "ALL BOP institutions, including Medical Centers, are expected to abide by the [F]ormulary as outlined in the BOP Pharmacy Services Program Statement."[46] It further mandates that all clinical directors, health services administrators, associate wardens and wardens are "expected to support and ensure compliance with the BOP National Formulary."[47]

61.    Under these mandatory policies, the BOP denies buprenorphine to all inmates suffering from opioid use disorder for "maintenance therapy," as well as methadone to all non-pregnant inmates suffering from opioid use disorder.[48]

62.    The BOP's denial of buprenorphine is arbitrary.

---

[43] National Sheriffs' Association, *supra* note 38, at 29.

[44] *Id.*

[45] *See* Federal Bureau of Prisons, *Program Statement: Pharmacy Services*, *No. P6360.01*, at 37 (Jan. 15, 2005), https://www.bop.gov/policy/progstat/6360_001.pdf [hereinafter *Program Statement: Pharmacy Services*]; Federal Bureau of Prisons Health Services, *National Formulary Part I*, at 15 (Winter 2018), https://www.bop.gov/resources/pdfs/national_formulary-part_I-2018.pdf [hereinafter *BOP National Formulary Part I*]; Federal Bureau of Prisons Health Services, *National Formulary Part 2*, at 102 (Winter 2018), https://www.bop.gov/resources/pdfs/national_formulary-part_II-2018.pdf [hereinafter *BOP National Formulary Part II*].

[46] *BOP National Formulary Part I*, *supra* note 45, at 4 (emphasis in original).

[47] *Id.* at 4-5.

[48] *Id.* at 15; *Program Statement: Pharmacy Services*, *supra* note 45, at 37.

COMPLAINT - 16

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

63.    The BOP's denial of buprenorphine to non-pregnant inmates with opioid use disorder is categorical; it applies even if buprenorphine has been prescribed by a physician as a medically-necessary treatment for someone placed into the BOP's custody.[49]

64.    The BOP's Formulary restricts the dissemination of buprenorphine to inmates suffering from opioid use disorder, providing that the medication "[w]ill only be approved for detoxification, NOT for pain or maintenance therapy."[50]

65.    There are no exceptions to this blanket prohibition within BOP's policies.

66.    The BOP's Program Statement for Pharmacy Services similarly restricts the dissemination of methadone within its institutions to "only three approved uses."[51] These uses are limited to "[t]reatment of opiate addicted pregnant inmates; [d]etoxification of opiate addicted inmates; and [t]reatment of severe pain."[52] This policy underscores that "[i]nmates will not be maintained on methadone with the exception of pregnant inmates."[53]

67.    The BOP's Clinical Guidance on Detoxification of Chemically Dependent Inmates instructs BOP facilities to taper inmates off of buprenorphine using "other opioid agents" over several days.[54]

---

[49] *Id.*

[50] *BOP National Formulary Part I*, *supra* note 45, at 15.

[51] *Id.*; *see also BOP National Formulary Part II*, *supra* note 45, at 102.

[52] *Program Statement: Pharmacy Services*, *supra* note 45, at 37.

[53] *Id.*

[54] *BOP Clinical Guidance on Detoxification*, *supr*a note 17, at 17.

COMPLAINT - 17

68.     Inmates in a BOP facility depend upon the facility to provide them with all medical care.[55]

69.     BOP facilities provide medically-necessary care to other inmates in their custody, but not to inmates who suffer from opioid use disorder.

**F.     Without Judicial Intervention, Ms. Godsey Will Be Denied Medically-Necessary Treatment for Her Opioid Use Disorder When She Is Incarcerated in a Federal Bureau of Prisons Facility**

70.     Defendants' policies, if permitted to be applied to Ms. Godsey, will cause her to lose access to Suboxone while she is incarcerated and experience what is known as "withdrawal."

71.     Ms. Godsey's Suboxone treatment is medically necessary. For her, forced withdrawal would be dangerous and potentially life-threatening.

72.     Ms. Godsey is diagnosed with opioid use disorder, a serious medical need and a recognized disability. If untreated, Ms. Godsey's opioid use disorder is likely to result in relapse and potentially a fatal opioid overdose, among other potential harms.

73.     Ms. Godsey has struggled with addiction since she was 21 years old. She was clean for six and a half years, but when she had her last child, she suffered from post-partum depression and relapsed. It was during this time that she first used heroin.

74.     She was arrested in May 2018 and spent approximately one week in federal custody. When she was released on bond, she was able to access treatment. With the help of her

---

[55] *See Medical Care: inmates receive essential medical, dental, and mental health services*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmates/custody_and_care/medical_care.jsp (last visited Sept. 11, 2019).

COMPLAINT - 18

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

doctor, she began taking Suboxone. She also underwent six months of inpatient treatment in Yakima, Washington.

75.     MAT with Suboxone has been the only treatment that has enabled Ms. Godsey to remain in active recovery and put her life back together.

76.     Ms. Godsey has been prescribed Suboxone to treat her OUD for sixteen months. With the help of the proper dose of Suboxone, she has been in active recovery since June 2018. Suboxone is medically necessary for the treatment of Ms. Godsey's serious medical condition.

77.     Without access to this medically-necessary treatment, Ms. Godsey faces a high risk of relapse, overdose, and death.

78.     Ms. Godsey lived at Hope Place shelter with three of her children for four months. They had a private room and were all doing very well living there. Hope Place forbids its residents from participating in MAT treatment programs.

79.     Ms. Godsey and her children were doing well at Hope Place and wanted to stay, so Ms. Godsey tried to taper herself off her MAT in order to be able to continue staying at Hope Place. Tapering off of her MAT was against her doctor's recommendation, but when faced with the prospect of losing her housing, she made the decision to taper off of her MAT.

80.     Within three days of reducing her Suboxone dose, Ms. Godsey could feel herself slipping back to her old ways. Her behaviors changed. The cravings for opioids returned. Ms. Godsey realized that she could not maintain her sobriety without her MAT.

81.     Ms. Godsey resumed a full dose of her prescribed Suboxone. She has since lost her housing at Hope Place as a result, but believes her sobriety is more important to her and her family.

COMPLAINT - 19

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

82.     Ms. Godsey is currently due to self-surrender for a sentence of two years and one day to a BOP facility on September 30, 2019. The BOP initially designated Ms. Godsey to Federal Correctional Institution Victorville Medium II Satellite Camp in Victorville, California, and has since changed her designation to Federal Correctional Institution Dublin, California.

83.     If, as the BOP's policies mandate, Ms. Godsey is prevented from accessing her Suboxone treatment when she is incarcerated, she will begin experiencing withdrawal symptoms and will no longer be receiving treatment for her OUD.

84.     On August 16, 2019, Ms. Godsey's counsel sent a letter to Defendants informing them of her serious medical need and requesting assurance that Ms. Godsey would be provided with her physician-prescribed dose of Suboxone during her time in their custody. Given Ms. Godsey's impending self-report deadline, counsel requested a response from Defendants by September 4, 2019. Declaration of Lisa Nowlin ("Nowlin Decl."), Ex. 1.

85.     On August 30, 2019, counsel for the BOP sent Ms. Godsey's counsel a letter stating that Ms. Godsey would be given an individualized assessment of her general medical needs and would be given treatment of some kind. Nowlin Decl., Ex. 2. The letter also requested copies of Ms. Godsey's medical records, and directed all questions to Dr. James K. Pelton, BOP Regional Medical Director. *Id*. Counsel for Ms. Godsey called Dr. Pelton and though he stated that efforts were being made to provide Ms. Godsey with Suboxone during her incarceration, when asked to confirm this in writing, he directed counsel to George Cho, an attorney with the BOP. Nowlin Decl. ¶ 4.

86.     Counsel for Ms. Godsey sent Mr. Cho and Timothy Rodrigues, Supervisory Attorney and Senior Attorney with the BOP, an email on September 9, 2019, reiterating the

COMPLAINT - 20

request in the August 16, 2019 letter for confirmation that Ms. Godsey would receive Suboxone during her incarceration. Nowlin Decl., Ex. 3 at 2. Mr. Rodrigues did not provide such confirmation in his email response, and only reiterated that Ms. Godsey would be given an individualized assessment of her medical needs upon arriving at the BOP facility. *Id*. at 1. On September 11, 2019, counsel for Ms. Godsey also requested assurance that Ms. Godsey's medical records would only be used for evaluating her MAT treatment plan, but did not receive a response from BOP's counsel. *Id*.

87.     Accordingly, the relevant officials at the BOP have been informed of Ms. Godsey's diagnosis and need for medical treatment, but it appears that they will not provide such treatment while she is incarcerated. In fact, no one on behalf of the BOP has asserted that, absent a court order, they will even consider continuing Ms. Godsey's Suboxone treatment upon her placement at the Federal Correctional Institution Dublin, California.

## CAUSES OF ACTION

## COUNT I

### Violation of the Eighth Amendment to the U.S. Constitution
### U.S. Const. amend. VIII
### (Deliberate Indifference to Serious Medical Need in Violation of the Eighth Amendment)

88.     The foregoing allegations are re-alleged and incorporated herein.

89.      The Defendants, while acting under color of federal law, deliberately, purposefully, and knowingly deny or will deny Ms. Godsey access to necessary medical treatment for her opioid use disorder, which is a serious medical need.

90.     Denying Ms. Godsey access to her prescribed dosage of Suboxone will immediately cause her physical and psychological suffering, will expose her to heightened risk for other serious medical conditions, and could trigger relapse into active addiction, potentially

COMPLAINT - 21

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

resulting in overdose and death. It also heightens the risk of suicidal ideation and acts of self-harm.

91.     As applied to Ms. Godsey, the denial of treatment by Defendants amounts to deliberate indifference to a serious medical need, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

## COUNT II

**Violation of the Rehabilitation Act**
**Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794**
**(Unlawful Discrimination Against Qualified Individuals with Disabilities)**

92.     The foregoing allegations are re-alleged and incorporated herein.

93.     The Federal Bureau of Prisons, which is overseen by Defendants, receives federal funding and is a federal agency that is subject to the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794(a).

94.     Drug addiction is a "disability" under the Rehabilitation Act. 29 U.S.C. § 705(20)(B); 42 U.S.C. §§ 12102 and 12131(2); 28 C.F.R. § 35.108(b)(2) (the phrase "[p]hysical or mental impairment includes, but is not limited to . . . drug addiction, and alcoholism.").

95.     The Rehabilitation Act applies to people, like Ms. Godsey, who are participating in a supervised drug rehabilitation program.

96.     Defendants deny or will deny Ms. Godsey the benefits of the Federal Bureau of Prison's medical programs on the basis of her disability.

97.     Defendants' refusal to make a reasonable accommodation for Ms. Godsey by providing her with access to her prescribed dosage of Suboxone during her incarceration, is discrimination against her on the basis of disability, even though accommodation would in no

COMPLAINT - 22

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

way alter the nature of the healthcare program. On information and belief, Defendants do not deny medically-necessary, physician-prescribed medications to other inmates with serious, chronic medical conditions, such as diabetes.

98.     This discrimination on the basis of disability is a violation of the Rehabilitation Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief as follows:

A.     Emergency, preliminary, and permanent injunctive relief ordering Defendants to provide Ms. Godsey with access to MAT, including the Suboxone dosage prescribed by her physician, during the entirety of her sentence and incarceration;

B.     A declaratory judgment holding that Defendants' policy denying all non-pregnant inmates access to medication-assisted treatment for opioid use disorder, as applied to Ms. Godsey, violates the Eighth Amendment;

C.     A declaratory judgment holding that Defendants' policy denying all non-pregnant inmates access to medication-assisted treatment for opioid use disorder, as applied to Ms. Godsey, violates the Rehabilitation Act;

D.     Award Ms. Godsey her attorneys' fees and costs; and

E.     Grant other and further relief as the Court may deem just and proper.

DATED this 18th day of September 2019.

Respectfully submitted,

COMPLAINT - 23

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 FIFTH AVENUE #630
SEATTLE, WA 98164
(206) 624-2184

AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION

By: */s/Lisa Nowlin*_____
    Lisa Nowlin, WSBA No. 51512
    John Midgley, WSBA No. 6511
    Mark Cooke, WSBA No. 40155
    AMERICAN CIVIL LIBERTIES UNION
    OF WASHINGTON FOUNDATION
    901 5th Avenue, Suite 630
    Seattle, Washington 98164
    Tel: (206) 624-2184
    lnowlin@aclu-wa.org
    jmidgley@aclu-wa.org
    mcooke@aclu-wa.org

    Bart Freedman, WSBA No. 14187
    Christina A. Elles, WSBA No. 51594
    K&L GATES LLP
    925 4th Avenue #2900
    Seattle, WA  98104
    Tel: (206) 623-7580
    bart.freedman@klgates.com
    christina.elles@klgates.com

    ***Attorneys for Plaintiff***

COMPLAINT - 24